UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KUTINA LOKETA HARTSFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 16-10473<br>Honorable Laurie J. Michelson<br>Magistrate Judge R. Steven Whalen |

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [16], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12]**

Plaintiff Kutina Loketa Hartsfield suffers from alcohol abuse, posttraumatic stress disorder, and either bipolar disorder or major depressive disorder with psychotic features. She sought supplemental security income under the Social Security Act. In June 2014, an administrative law judge acting on behalf of Defendant Commissioner of Social Security concluded that Hartsfield was not disabled within the meaning of the Social Security Act. Hartsfield appealed here. The Court referred her motion for summary judgment (R. 12) and the Commissioner's motion for summary judgment (R. 15) to Executive Magistrate Judge R. Steven Whalen, who recommends affirming the ALJ's disability determination. Hartsfield objects.

Having performed a *de novo* review of those portions of the magistrate judge's report and recommendation to which Hartsfield has objected, *see* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Court will overrule the objections and adopt the recommendation of the magistrate judge for the reasons explained below.

Hartsfield's first objection reads as follows: "The Magistrate [Judge] erred when he found that it was proper for the ALJ to conclude that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace after the ALJ rejected Plaintiff's long-time treater, Dr. Stevenson's findings, and relied instead on the non-examining opinion of Dr. Leno." (R. 17, PID 532.)

The first part of this objection is unclear, as the body of Hartsfield's argument fails to explain any error surrounding the ALJ's conclusion "that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace." In fact, Hartsfield's argument does not mention this issue at all. So the Court will not address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

The essence of Hartsfield's objection seems to be that the magistrate judge erred in finding that the ALJ properly assigned little weight to the opinion of a treating psychiatrist, Dr. Stephanie Stevenson, M.D., who opined that Hartsfield was disabled.

This is the background. At her hearing before the ALJ, Hartsfield testified that the thrust of her disability claim was that she "can't be around people." (R. 7-2, PID 83.) But in periodic treatment records from 2011 to 2013 at Development Centers, Dr. Stevenson often noted that Hartsfield's grooming, hygiene, and concentration were all "good," her behavior "cooperative," and her thoughts "organized." Those records also reflected that Hartsfield was depressed and reported hallucinations and homicidal or suicidal ideations.

By July 2013, Dr. Stevenson noted that while Hartsfield was grieving her mother's death and "sensing" her mother's "presence," she had "plans to go with her friend to Texas for a vacation" and "reported no problems with her current medication regimen." (R. 7-8, PID 421.) Although Dr. Stevenson noted Hartsfield's depression and hallucinations, Hartsfield had "denied having suicidal or homicidal ideations" at that particular exam. (R. 7-8, PID 421, 424.) And similar to various prior records, Dr. Stevenson also indicated that Hartsfield's grooming, hygiene, and concentration were all "good," her behavior was "cooperative," and her thoughts were "organized and coherent." (*Id.*) The next month's record had nothing notable in it, with much of the form left blank. (R. 7-8, PID 417–20.) Then, suddenly, in October 2013—without any intervening treatment records from Dr. Stevenson suggesting a change—Dr. Stevenson and an outpatient therapist opined in a letter that because of Hartsfield's symptoms, including "severe depression," "some paranoia," and her reports of hallucinations, she is "not able to work at all, whether part time or full time work." (R. 7-7, PID 365.)

The ALJ gave Dr. Stevenson's opinion little weight, for several reasons. (R. 7-2, PID 62.) First, the ALJ stated that the determination of whether someone is disabled is reserved to the Commissioner. (*Id.*) Second, the ALJ reasoned that Dr. Stevenson's conclusion about Hartsfield's limitations "is more severe than reflected in the treatment records." (*Id.*) Third, the ALJ pointed out that in Stevenson's treatment records "[Hartsfield's] GAF scores are consistently at 50 and do not change even with some reported improvement with treatment."[1]

---

[1] A Global Assessment of Functioning (GAF) score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders*, 30–34 (4th ed., Text Revision 2000). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. A GAF score of 41 to 50 reflects "[s]erious symptoms (e.g. suicidal ideation, severe obsession rituals, frequent shoplifting) OR

3

(*Id*.) Finally, the ALJ found that Hartsfield's symptoms "do continue and are severe, and there is some evidence of episodic hallucinations, but not to the extent, [sic] they would preclude even simple work in a low stress environment." (*Id*.)

In Hartsfield's summary-judgment motion, she challenged the ALJ's consideration of Dr. Stevenson's opinion on this ground: "nowhere in the decision does the ALJ address the length of time the providers have been treating her, the frequency of examination, and the nature and extent of treatment relationship." (R. 12, PID 472.)

The magistrate judge rejected this argument, finding that the ALJ's opinion expressly discussed the nature, length, and frequency of Dr. Stevenson's treatment. (R. 16, PID 525.) (As the ALJ expressly noted of Stevenson's treatment, Hartsfield had "been seen on an individual basis for the past two years . . . for monthly therapy sessions and at least once a month [by Dr. Stevenson] for psychiatric care." (R. 7-2, PID 62.)) The magistrate judge also found that the ALJ's analysis of Dr. Stevenson's opinion "is otherwise well supported and explained" because the ALJ "noted that Dr. Stevenson's opinion was inconsistent with the treating records" and "prefaced his analysis with a thorough discussion" of those records. (R. 16, PID 525.) The magistrate judge also said that his own review of the records supported the ALJ's determination because Hartsfield "exhibited a consistently unremarkable thought process, denied suicidal or homicidal plans, and was cooperative and well-groomed despite her alleged difficulty interacting with others." (*Id*.) Finally, the magistrate judge added, "[w]hile Hartsfield's part-time work as a security guard does not rise to the level of past relevant work, her ability to work part time without incident subsequent to the alleged onset of disability also undermines Dr. Stevenson's opinion that Plaintiff was psychologically unable to perform any work." (R. 16, PID 525.) This

---

any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*. at 34.

4

referred to Hartsfield's own testimony that she sporadically worked part-time as a security guard, even after her alleged onset of disability, January 1, 2010. (*See* R. 7-2, PID 81–82.)

With that background in mind, the Court turns to Hartsfield's argument in her first objection. It is two-fold. First, she claims that the evidence discussed by the ALJ is "hardly inconsistent" with Dr. Stevenson's sweeping conclusion that she cannot work at all. (*See* R. 17, PID 533.) But she relies almost entirely on the GAF scores that Dr. Stevenson assigned. Those scores do not show that the ALJ's rejection of Dr. Stevenson's opinion was unreasonable. While "consistency among low GAF scores" may show "that an ALJ minimized the severity of a claimant's symptoms and failed to provide good reasons for assigning limited weight to a treating doctor's opinion," *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835–36 (6th Cir. 2016) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 530 n.6 (6th Cir. 2014)), the ALJ acknowledged the severity of Hartsfield's symptoms, and reasonably found that while severe, they were not severe enough to justify Dr. Stevenson's conclusion that Hartsfield was totally unable to work. Additionally, "GAF scores are not raw medical data, and the Commissioner has declined to endorse the [GAF] score for use in Social Security benefits programs." *Id.* (internal quotation marks and citations omitted). Moreover, the Court agrees with the Commissioner that one can infer from the ALJ's reference to the scores that the ALJ found them to be unreliable—and for good reason. The Court's own examination of Dr. Stevenson's treatment records reveals that despite periodic changes in Hartsfield's condition throughout the years of treatment—including whether she reported hallucinations or suicidal ideations—Dr. Stevenson never varied from a GAF score of "50" and never explained why she held steadfast to that number.

The second aspect of Hartsfield's first objection is also unavailing. Hartsfield argues that, contrary to the magistrate judge's conclusion, her part time sporadic work history as a security

5

guard "actually **supports** Dr. Stevenson's opinion" that she is disabled. (R. 17, PID 535 (emphasis in original).) It is true that in the mental health context, a sporadic work history could lend itself to the conclusion that a claimant is unable to engage in substantial gainful employment. *See Gleason v. Colvin*, 152 F. Supp. 3d 364, 384 (M.D. Pa. 2015) (citing cases). But recall the breadth of Dr. Stevenson's opinion: it was not simply that Hartsfield cannot engage in substantial gainful activity but rather that she cannot "work *at all*, whether *part time or full time*." (R. 7-7, PID 365.) That opinion left no room for the possibility that Hartsfield could work part time, even on a sporadic basis. Yet Hartsfield's history as a security guard after her alleged onset date contradicts that conclusion. And even if the magistrate judge erred by discounting Dr. Stevenson's opinion with Hartfield's work history (something the ALJ apparently did not take into consideration), this does not show that the ALJ erred in assigning Dr. Stevenson's opinion little weight. Accordingly, the Court overrules Hartsfield's first objection.

Hartsfield's second objection fares no better. She objects that "[t]he Magistrate [Judge] erred in finding the ALJ's decision was supported by substantial evidence." (R. 17, PID 536.) The body of her argument fails to elaborate sufficiently beyond that. Hartsfield argues that "both the ALJ and the Magistrate Judge misconstrued medical evidence and testimony that ultimately, resulted in an inadequate RFC to address Plaintiff's multiple severe medical conditions (specifically, bi-polar disorder, major depressive disorder, recurring with the severe psychotic features, post-traumatic stress disorder, alcohol abuse, and personality disorder NOS, and paranoid personality disorder, left foot keratitis and obesity)." (R. 17, PID 536.) She then summarizes some of the evidence—mostly her own testimony—and urges, "Despite this, the ALJ and Magistrate [Judge] found that Plaintiff's ailments did not rise to the level of disability. If this evidence had not been misconstrued, Plaintiff would have been found incapable of

6

performing substantial gainful activity. . . . If the ALJ had not made the above outlined legal errors and/or all of the legal errors outlined in Plaintiff's Motion for Summary Judgment, the Plaintiff would have been found to be disabled." (R. 17, PID 537.)

Simply saying that evidence was "misconstrued," without more, is insufficient to mount a proper objection. The magistrate judge's report and recommendation in this case made clear that the "[f]iling of objections which raise some issues but fail to raise others with specificity will not preserve all objections a party might have to this Report and Recommendation." (R. 16, PID 529.) The report also directed that "any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains." (R. 16, PID 529 (emphasis in original).)

Hartsfield did not heed these requirements. Her objection does not specify or explain how the ALJ or magistrate judge "misconstrued" the evidence or what the "outlined legal errors" are. Her second objection thus amounts to little more than a general objection, which "has the same effects as would a failure to object." *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[O]bjections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). So the Court will overrule the second objection.

For the reasons stated, having reviewed the report and recommendation (R. 16) and Hartsfield's objections (R. 17), the Court will ADOPT the report, DENY Hartsfield's motion for summary judgment (R. 12), GRANT the Commissioner's motion for summary judgment (R. 15), and affirm the disability determination of the Commissioner pursuant to sentence four of

42 U.S.C. § 405(g). A separate judgment will issue.

    SO ORDERED.

|  |  |
|---|---|
|  | s/Laurie J. Michelson |
|  | LAURIE J. MICHELSON |
| Dated: March 29, 2017 | U.S. DISTRICT JUDGE |

**<u>CERTIFICATE OF SERVICE</u>**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2017.

                                                             s/Keisha Jackson
                                                            Case Manager